<small>AUBERT<br>v.<br>AUBERT.</small>

in fact, no remission at all, as long as the disease which caused the derangement of mind continued to increase in violence. But if there had been an interval of apparent reason, it seems that under the civil law this was not a species of insanity in which lucid intervals are presumed.

The Roman jurisconsults distinguished two classes of insane persons; one class they called *furiosos*, the other *mente captos*. We have already shown that the insanity of the testator was of the latter class. All the Roman laws which speak of lucid intervals have exclusive reference to the first class. No law mentions them with reference to *mente capti*. For instance, the law, 39 Digest de judiciis, authorized the insane of the first class to discharge judicial functions during lucid intervals. But this was never permitted in cases of simple insanity. Before Justinian, the sons and daughters of the *mente captus* could marry without his authorization. But the children of the *furiosus* were not dispensed from obtaining it, because the law presumed lucid intervals during which it might be given. The reason of the distinction is, that with the *furiosus* the fits and intervals were easily perceived, while in cases of simple insanity they are hardly perceptible. The definition of the *mente captus* is qui nullum extrinsecus ostendit furorem, qui habet furorem latentem,—the *furor* that dwells within without giving external signs. Dumoulin, comment. on the code, title qui testamenta facere possunt.

We are satisfied that the testator was not of sound mind at the time he made his will, and that the verdict and judgment are in conformity with the law and evidence.

It is therefore ordered that the judgment be affirmed, with costs.

---

## MARTIAL VERRET et al. *v.* CELESTE BELANGER, Widow of TANNER.

<small>6  109<br>50  977</small>

Where the widow causes the community property to be adjudicated to her, and assumes the payment of the debts of the community, she cannot escape liability therefor upon the ground that she was ignorant of the debts she thus assumed.

The judgment against the principal is *primâ facie* evidence against the surety of the amount due by the principal, subject to be inquired into and corrected on proper allegations, supported by legal evidence.

Where the surety offers in evidence an account made out by the principal, the surety assumes the correctness of the account, and cannot be allowed afterwards to dispute it.

Prescription does not run against minors, except in certain cases specified by law. C. C. 3505, 3519.

Where a dative executor sold property for notes which did not mature until his appointment expired, he is still bound to account for the notes so received; and if he does not, his surety is liable for their amount.

APPEAL from the District Court of Terrebonne, *Randall*, J. *Winchester Hall*, for plaintiffs. *J. C.* and *A. Beatty*, for defendant. The judgment of the court was pronounced by

SLIDELL, J. In 1835, *L. H. Verret* was appointed dative testamentary executor of the will of *Jacques Verret*, and gave his official bond, with *Lemuel Tanner* as his surety. The condition of the bond was, that he should well and faithfully discharge the duties of his office, and render a true and just account of whatever money or property he might receive in his official capacity, and pay

over to the legitimate heirs of the deceased whatever balance he might be owing to them whenever legally required so to do. This action is brought by *Martial* and *Jean R. Verret*, two of the heirs of *Jacques Verret*, to recover from the widow of *Lemuel Tanner* their shares of the estate of their father. They allege that they had brought suit against the dative executor for a settlement of his accounts, and had each recovered a judgment against him for $685 14, with interest from October, 1847, and had failed to collect upon execution issued. That the widow of *Tanner*, who was liable as surety, had assumed the payment of all his debts.

The answer of *Mrs. Tanner*, after a general denial, avers that the executor rendered an account of his executorship in September, 1835, showing the shares of the plaintiffs to be $652 30. That from that date the tutrix of plaintiffs was in default for not enforcing payment; and the claim is barred by the lapse of ten years. That the plaintiffs had only a right of action against their tutrix. There was also a plea, that the executor, with the consent of the tutrix, had expended a large amount for their education, which extinguished or reduced their claim against him. There was a verdict and judgment in favor of the defendants. The plaintiffs have appealed.

The first inquiry is, whether *Mrs. Tanner* has rendered herself liable for any amounts that may be due by the estate of *Tanner* upon the bond. Upon this point we find no difficulty. After the death of *Tanner*, in 1842, the property of his succession, with an inconsiderable exception, was adjudicated to her as widow in community; and an act was signed by her and her children, in which she agrees to pay all the debts due by said estate out of her own funds. Having taken possession of the property of the succession, and that too, under a promise to pay all its debts, the creditors of the succession have clearly a right to look to her, as the recipient of the fund which was bound for their claims. It is said that the liability upon this bond was unknown to the widow and heirs when the community was adjudicated to her and she assumed its debts. We do not consider that ignorance, if it existed, as effecting the rights of creditors, whatever equity may grow out of it as between her and the heirs.

The plaintiffs offered in evidence the proceedings for accounts, and the judgment obtained against the executor, to prove the amount of the liability of the principal in the bond; but the court, on the objection of the defendant, admitted it merely to prove *rem ipsam*. In this, we think there was error. The judgment against the principal should have been received against the surety as *primâ facie* evidence of the amount due by him as executor, subject to be inquired into and corrected on proper allegations, and by legal evidence. See *Canal Bank* v. *Brown*, 4th Ann. 548.

In consequence of this ruling in the court below, we should have considered it our duty to remand this cause, were it not that the defendant has offered evidence which enables us to sustain, with the exception of a trifling amount, the claim of the plaintiffs. This evidence is an account prepared in September, 1835, or thereabouts, by the executor, and which exhibits the amount due to each of the plaintiffs as $652 30, being a few dollars less than was awarded by the judgment against the executor. The defendant offered this for the purpose of showing that, in 1835, the executor had accounted to the tutrix, and a right of action then arose in her favor for the benefit of her wards. Having thus used this account as a means of defence, they have assumed its correctness, and cannot consistently gainsay it.

The question then presents itself, how far the alleged rendition of account in 1835 affects the plaintiffs. It was handed to the parish judge having jurisdiction of the succession sometime in the fall of 1835, but was unaccompanied by any petition, and no judicial action was had upon it. The tutrix, it appears, was informed of the fact that the account had been delivered to the parish judge. Assuming that the tutrix might then have demanded from the executor the amount acknowledged to be due the minors, or at least, as a preliminary to such recourse, have obtained judicial action on the account, did her failure to do so permit the commencement of prescription from that date in favor of the official surety? We think not. The plaintiffs were minors. Minors cannot be prescribed against, except in the cases provided by law. C. C. 3488. The rule is reiterated in article 3519. That, in general, the fact that the minor is represented by a tutor or tutrix capable of bringing suit in his behalf, does not obviate the suspension of prescription, is evident from article 3505, in which a prescription of five years is established for a particular class of debts; and it is expressly declared that it runs against minors, reserving to them their recourse against their tutors. In the article 3519 it is said, prescription does not run against minors and persons under interdiction, except in the cases specified above. In deciding, however, the case before us, we are not to be understood as saying that there are no cases in which prescription runs against a minor represented by a tutor, without a specific provision to that effect.

It was said by the appellee, that the bond was dated in 1835, and expired on the 3d July, 1846, by force of the article 1199, C. C. The argument seems to be, that as, under the then existing law, a dative executor was appointed for a year, he was *functus officio* at the end of that time, and if his appointment was renewed, was required to give new security. What, under the then existing law, would be the liability of a surety for property coming into the hands of a dative executor after the expiration of the year, we need not determine. The surety is undoubtedly chargeable for property which came into the executor's hands during the year. Such was the case here. It is true, that a portion of the proceeds of sale which came into the executor's hands was represented by notes, which did not mature until after the expiration of the year; but that did not relieve the surety, his principal not having accounted nor delivered to the heirs either the notes or their proceeds. The condition of the bond was, that he would faithfully discharge his duty as executor, and pay over to the legitimate heirs whatever balance might be owing to them.

With regard to the amount expended by *Verret* for the education of his brothers, however proper in point of morals it might be, that they should credit it upon their claim against him, we are constrained to say, that they are under no legal obligation to do so. *Verret* was not the tutor of the plaintiffs. It is proved that he undertook to send them to school from motives of brotherly affection and duty; paid for their education out of his own funds; and did not anticipate a reimbursement of these expenditures, which were intended by him to be gratuitous.

It is therefore ordered, adjudged and decreed, that the judgment of the court below be reversed; and that there be judgment against the said defendant in favor of the plaintiffs, *Martial* and *Jean R. Verret*, each for the sum of $652 30, with interest from Oct. 9th, 1847, till paid, and costs in both courts.